# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TERRY LOUIS CARTER,

      Plaintiff,

vs.                                  No. CIV 16-0786 JB/SMV

UNITED STATES DEPARTMENT OF
DEFENSE; UNITED STATES
DEPARTMENT OF THE AIR FORCE; and
MIKE O'CALLAGHAN FEDERAL
MEDICAL CENTER, USAF 99TH MEDICAL
GROUP.

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Complaint for Declaratory and Injunctive Relief; and for Damages under the U.S. Privacy Act, filed July 6, 2016 (Doc. 1)("Complaint"); and (ii) the Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), filed July 6, 2016 (Doc. 2)("Application"). Plaintiff Terry Louis Carter appears pro se. The primary issues are (i) whether Carter may proceed in forma pauperis; and (ii) whether the statute of limitations in the Privacy Act, 5 U.S.C. § 552a(g)(5), bars the counts that Carter asserts in the Complaint. The Court concludes that, although Carter may proceed in forma pauperis, the Privacy Act's statute of limitations bars the counts which the Complaint brings. Accordingly, the Court will: (i) grant Carter's Application and (ii) dismiss Carter's Complaint without prejudice.

## <u>FACTUAL BACKGROUND</u>

The Court takes its facts from the Complaint. <u>See</u> Complaint ¶¶ 1-33, at 1-17. On September 5, 2013, Carter injured his left knee while working for a private employer. <u>See</u>

Complaint ¶ 9, at 4-5.  On April 30, 2014, Carter visited the Mike O'Callaghan Federal Medical Center ("MOFMC").[1]  See Complaint ¶ 9, at 4.  Bradley G. McLaughlin, a physicians' assistant at MOGMC, examined Carter.  See Complaint at 5.  Carter told McLaughlin about his injured knee and the circumstances in which it was injured.  See Complaint ¶ 10, at 5.  On May 12, 2014, Carter returned to MOFMC for a follow-up examination and further treatment for his knee. See Complaint ¶ 11, at 5.  At the May 12, 2014, visit, MOFMC personnel made additions to Carter's medical records.  See Complaint ¶ 12, at 5.

On June 30, 2014, Carter returned to MOFMC, and again McLaughlin treated Carter. See Complaint ¶ 13, at 5.  On that day, Carter discovered that McLaughlin had entered an allegedly false medical history into Carter's medical records on April 30, 2014.  See Complaint ¶ 13, at 5.  At the June 30, 2014, visit, Carter told McLaughlin that the records of Carter's medical history required correction, but McLaughlin did not respond.  See Complaint ¶ 13, at 5-6.  On August 14, 2014, Carter again visited MOFMC for treatment, and McLaughlin treated him.  See Complaint ¶ 14, at 6.  At that examination, McLaughlin did not mention Carter's June 30, 2014, request that McLaughlin or another person correct his medical records.  See Complaint ¶ 14, at 6.

On August 15, 2014, Carter "formally sought" MOFMC to amend his medical records. See Complaint ¶ 15, at 6.  Specifically, Carter objected to the following excerpts that McLaughlin entered into his medical records on April 30, 2014: "[Carter] reports his symptoms

---

[1]The Mike O'Callaghan Federal Medical Center, located in Las Vegas, Nevada, is a joint venture between the 99th Medical Group and VA Southern Nevada Healthcare Systems.  See VA Southern Nevada Healthcare System (February 6, 2017), http://www.lasvegas.va.gov/locations/Mike_O_Callahan_Federal_Medical_Center.asp. The 99th Medical Group provides medical care to Department of Defense and Veterans beneficiaries and is associated with the United States Air Force 99th Air Base Wing located at Nellis Air Force Base, Nevada.  See 99th Air Base Wing (February 13, 2017), http://www.nellis.af.mil/About/FactSheets/Display/tabid/6485/Article/284154/99th-air-base-wing.aspx.

have been present for several years . . . .   [Carter] reports a remote history of a twisting injury to the knee <u>several years ago the onset of his symptoms</u> . . . .   [Carter] denies <u>any change in sensation or function distally</u>."   Complaint ¶ 15, at 6 (alteration added)(emphasis in Complaint)(internal quotation marks omitted).   Carter did not receive a response from MOFMC regarding his request that MOFMC amend his medical records.   <u>See</u> Complaint ¶ 16, at 6.

## PROCEDURAL BACKGROUND

1.   **Carter's Complaint.**

Carter filed a verified complaint on July 6, 2016.   <u>See</u> Complaint at 1, 17.   In the Complaint, Carter alleges three counts.   <u>See</u> Complaint ¶¶ 16-33, at 4-17.   First, Carter alleges that the Defendants violated his rights under the Privacy Act by failing to act upon his request that the Defendants amend his medical records to remove false medical information.   <u>See</u> Complaint ¶ 8, at 4 (citing 5 U.S.C. § 552a(d)(2)-(3)).   Carter alleges that the Defendants failed to provide the "Privacy Act Statement" that 5 U.S.C. § 552a(e)(3) requires.   <u>See</u> Complaint ¶ 16, at 6.   Carter further alleges that the Defendants lacked a basis to believe that the medical records which McLaughlin made on April 30, 2014, were accurate, because the Defendants had access to records that document decades of his medical history.   <u>See</u> Complaint ¶ 17, at 7.   Carter additionally states that the Defendants "have routinely compiled false medical information over the years to interfere with Plaintiff's rights to work related compensation benefits."   Complaint ¶ 18, at 7.

Second, Carter alleges that the Defendants violated his Privacy Act right "by failing or refusing to maintain Plaintiff's medical records with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to insure fairness to Plaintiff in making any determination about him."   Complaint ¶ 19, at 7 (citing 5 U.S.C. § 552a(e)(5)).   Carter further

alleges that the Defendants' recording of false medical history was "either a deliberate misrepresentation manifested from an inimical design to unconsciously interfere with Plaintiff's right to proper medical treatment, and/or to prevent Plaintiff from substantially establishing a record of the continuing debilitation from Plaintiff's September 2013 work related injury." Complaint ¶ 21, at 8.  Carter also states that, because he is a beneficiary of a retirement program for United States Armed Forces members, "the requested correction of said medical records was necessary to insure and maintain the integrity of said federal benefits program . . . ."  Complaint ¶ 22, at 8.  Further, Carter alleges that the Defendants knew that his medical records' inaccuracy has collateral adverse consequences for Carter's on-going workers' compensation claim.  See Complaint ¶ 24, at 9.  Carter also alleges that the Defendants' failure to amend his medical records was "the catalyst for denying Plaintiff access to diagnostic procedures that could have illuminated more objective findings central to any treatment plan appropriate to Plaintiff's deteriorating condition."  Complaint ¶ 27, at 11.

Third, Carter states that the Defendants violated his Privacy Act rights "by failing or refusing to insure the integrity of Plaintiff's medical records . . . ."  Complaint ¶ 29, at 12 (citing 5 U.S.C. § 552a(e)(10)).  Carter also says that the Defendants failed or refused to protect Carter against any threats which could result in substantial harm or unfairness to him "based upon the information maintained in his medical records."  Complaint ¶ 29, at 12.  Carter asserts that the Commander of the 99th Medical Group was "made aware" of Carter's request to amend his medical records, but the "Commander undertook no substantial action in connection therewith . . . ."  Complaint ¶ 31, at 12.

Carter requests equitable relief and damages.  See Complaint at 15-17.  He wants the Court to declare that the April 30, 2014, and May 12, 2014, medical reports that McLaughlin

wrote be amended to reflect "Retired USMC Cpl. Terry L. Carter, 56 year old male, sustained L knee injury in Sep 2013 when a platform in the back of a truck collapsed as he was twisting on his L LE[]."   Complaint at 15 (alteration in Complaint).   Carter also seeks damages and attorney's fees.  See Complaint at 15-17.

### 2.      Carter's Application to Proceed In Forma Pauperis.

In conjunction with his Complaint, Carter also filed an application to proceed without paying fees or costs.  See Application at 1.  Carter signed the Application, declaring that he is unable to pay the costs of these proceedings and provided the following information: (i) the income amount he expects to receive next month is $2,608.83 in disability, see Application at 2; (ii) his average monthly expenses are $3,418.81, see Application at 5; (iii) the value of his assets is $2,019.00, see Application at 3; (iv) his amount of cash is fifty-five cents, and he has $2.55 in his Wells Fargo checking and savings account, see Application at 2; (iv) he is unemployed, see Application at 2; (v) the United States Department of Veterans Affairs owes him $397,800.00; and (v) he is "homeless as a result of a tactical move by the U.S. Department of Veterans' Affairs to interfere with [Carter's] prosecution of claims against the agency . . . ," Application at 5 (alteration added).  On November 8, 2016, Carter filed notices that summons were served on the Defendants on November 7, 2016.  See Summons to 99th Medical Group, filed November 8, 2016 (Doc. 8); Summons to Secretary of the Air Force, filed November 8, 2016 (Doc. 9); Summons to Secretary of Defense, filed November 8, 2016 (Doc. 10).

### 3.      The Defendants' Answer.

On January 9, 2017, the Defendants answered the Complaint.  See Defendants' Answer to Plaintiff's Complaint, filed January 9, 2017 (Doc. 12)("Answer").  The Defendants admitted that McLaughlin took Carter's medical history on April 30, 2014, and that Carter attended a

follow-up appointment in connection with the treatment of his knee on May 12, 2014.  See Answer at 2.  The Defendants also admit that "entries were made in Plaintiff's medical record in connection with his April 30, 2014 appointment . . . ."  Answer at 3.  The Defendants also admit that they maintained Carter's medical records at MOFMC, including records concerning Carter's medical examinations.  See Answer at 3.   The Defendants further admit that Carter sent an August 15, 2014, letter to McLaughlin and to the Commander of the 99th Medical Group, but state that no response is required.  See Answer at 3.  The Defendants also admit that Carter is a retired United States Armed Forces member and is entitled to benefits that the law requires be given to retired members.  See Answer at 4.  The Defendants deny the balance of Carter's allegations.  See Answer at 1-5.

The Defendants raise several "affirmative defenses."  Answer at 5.  The Defendants argue: (i) that the Complaint fails to state a claim upon which relief may be granted, see Answer at 5; (ii) that Carter's claims are barred, because Carter failed to exhaust his administrative remedies, see Answer at 5; (iii) that Carter's claims are barred, because Carter failed to timely exhaust his administrative remedies, see Answer at 5; and (iv) that Carter's claims are barred, because of his failure to mitigate damages, see Answer at 5.  Consequently, the Defendants request that the Court dismiss the Complaint with prejudice.  See Answer at 5.

## LAW REGARDING PROCEEDING IN FORMA PAUPERIS

The statute for proceedings in forma pauperis, see 28 U.S.C. § 1915(a), provides that the court may authorize the commencement of any suit without prepayment of fees by a person who submits an affidavit which includes a statement of all assets that the person possesses and that the person is unable to pay such fees, see 28 U.S.C. § 1915(a).

> When a district court receives an application for leave to proceed in forma pauperis, it should examine the papers and determine if the requirements of § 1915(a) are satisfied.  If they are, leave should be granted.  Thereafter, if the court finds that the allegations of poverty are untrue or that the action is frivolous or malicious, it may dismiss the case . . . .

Menefee v. Werholtz, 368 Fed. App'x 879, 884 (10th Cir. 2010)(citing Ragan v. Cox, 305 F.2d 58, 60 (10th Cir. 1962)).

"The statute [allowing a litigant to proceed in forma pauperis] was intended for the benefit of those too poor to pay or give security for costs . . . ."  Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 344 (1948).  While a litigant need not be "absolutely destitute," "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. at 339.  The Court may, however, deny permission for a person to proceed in forma pauperis where his or her monthly income exceeds his or her monthly expenses by a few hundred dollars.  See Brewer v. City of Overland Park Police Department, 24 F. App'x 977, 979 (10th Cir. 2002)(holding that litigant whose monthly income exceeded his monthly expenses by a few hundred dollars according to his own accounting appeared to have sufficient income to pay filing fees, and, thus, was not entitled to in forma pauperis status).[2]  "[A]n application to proceed in forma pauperis should be evaluated in light of the applicant's present financial status."  Scherer v. Kansas, 263 F. App'x 667, 669 (10th Cir. 2008)(citing Holmes v. Hardy, 852 F.2d 151, 153 (5th Cir. 1988)).

---

[2]At the time of the ruling in Brewer v. City of Overland Park Police Department, the filing fee for the appeal was $100.00.  See 28 U.S.C. § 1983 (2001).  Brewer's monthly income exceeded his monthly expenses by $242.00.  See Brewer v. City of Overland Park Police Department, No. 01-3055, Appellant's Motion for Leave to Proceed on Appeal Without Prepayment of Costs or Fees at 3-7 (10th Cir. May 11, 2001).

The Court may grant a motion to proceed in forma pauperis even if the complaint fails to state a claim and the Court must dismiss it pursuant to 28 U.S.C. § 1915(e)(2).  See Buchheit v. Green, 705 F.3d 1157, 1160-61 (10th Cir. 2012)("There is simply nothing in the language of the statute [regarding proceedings in forma pauperis, 28 U.S.C. § 1915] indicating that such a dismissal must occur before the grant of a motion to proceed [in forma pauperis].").

> [I]f an application to proceed in forma pauperis is supported by papers satisfying the requirements of 28 U.S.C. § 1915(a) leave to proceed should be granted, and then, if the court discovers that the action is frivolous or improper or that the allegations of poverty are untrue, it can dismiss the proceeding under 28 U.S.C. § 1915(d).

Oughton v. United States, 310 F.2d 803, 804 (10th Cir. 1962).  Section 1915 provides that the "officers of the court shall issue and serve all process, and perform all duties in [proceedings in forma pauperis]."  28 U.S.C. § 1915(d).  Further, rule 4 of the Federal Rules of Civil Procedure provides:

> At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

Fed. R. Civ. P. 4(c)(3).

## LAW REGARDING DISMISSAL PURSUANT TO 28 U.S.C. 1915(e)(2)(B)

The statute governing proceedings in forma pauperis requires federal courts to dismiss an in forma pauperis proceeding that "is frivolous or malicious; . . . fails to state a claim on which relief may be granted; . . . or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it

would be futile to give him an opportunity to amend." Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).

> While we have held that a sua sponte dismissal pursuant to § 1915(e)(2) need not be preceded by notice and an opportunity to amend when amendment would be futile, a district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim.

Montana v. Hargett, 84 F. App'x 15, 17 (10th Cir. 2003).

"In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." Kay v. Bemis, 500 F.3d at 1217. The court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief -- i.e., the factual allegations must be enough to raise a right to relief above the speculative level. See Kay v. Bemis, 500 F.3d at 1218 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Dismissal of an in forma pauperis complaint as frivolous is not an abuse of discretion if based on a determination that the pro se litigant did not state a viable legal claim and that the complaint consisted of little more than unintelligible ramblings. See Triplett v. Triplett, 166 F. App'x 338, 339-40 (10th Cir. 2006). However, "pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings." Hall v. Bellmon, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991).

## **LAW REGARDING THE PRIVACY ACT'S STATUTE OF LIMITATIONS**

The Privacy Act, 5 U.S.C. § 552a, "'governs the government's collection and dissemination of information and maintenance of its records [and] generally allows individuals to gain access to government records on them and to request correction of inaccurate records.'" Harrell v. Fleming, 285 F.3d 1292, 1293 (10th Cir. 2002)(alteration in original)(quoting Gowan

v. United States Dep't of the Air Force, 148 F.3d 1182, 1187 (10th Cir. 1998)).  See Skinner v.
U.S. Dep't of Justice & Bureau of Prisons, 584 F.3d 1093, 1096 (D.C. Cir. 2009)(concluding that
the Privacy Act "imposes a set of substantive obligations on agencies that maintain systems of
records, including the requirement that records used in making determinations about individuals
be accurately maintained")(citing 5 U.S.C. § 552a(e)(5)).  "The Privacy Act was enacted to
promote 'governmental respect for the privacy of citizens by requiring all departments and
agencies of the executive branch and their employees to observe certain constitutional rules in
the computerization, collection, management, use, and disclosure of personal information about
individuals.'"  Wren v. Harris, 675 F.2d 1144, 1145-46 (10th Cir. 1982)(quoting S. Rep. No. 93-
1183, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 6916).  The Privacy Act
"provides civil remedies for its violation, including court-ordered amendment of records and
money damages."  Skinner v. U.S. Dep't of Justice & Bureau of Prisons, 584 F.3d at 1096.  "A
cause of action arises under the Act when: (1) an error is made in maintaining the plaintiff's
records, (2) the plaintiff was wronged by such error, and (3) the plaintiff either knew or had
reason to know of the error."  Harrell v. Fleming, 285 F.3d at 1293 (citing Bergman v. United
States, 751 F.2d 314, 316 (10th Cir. 1984)).

     The Privacy Act contains a statute of limitations.  See 5 U.S.C. § 552a(g)(5).  A statute of
limitations bar is an affirmative defense, and "it may be resolved on a . . . motion to dismiss
'when the dates given in the complaint make clear that the right sued upon has been
extinguished.'"  Torrez v. Eley, 378 F. App'x 770, 772 (10th Cir. 2010)(omission
added)(quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).
See Lee v. Rocky Mountain UFCW Unions & Emp'rs Trust Pension Plan, No. 92-1308, 1993
WL 482951, at *1 (10th Cir. Nov. 23, 1993)("Because the critical dates appeared plainly on the

face of [plaintiff's] complaint, we conclude that the statute of limitations defense was properly raised and resolved in the Rule 12(b) context."). When a party has asserted a statute of limitations issue in a rule 12(b) motion, the Court accepts all well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff to determine whether the statute of limitations has run. See Sunrise Valley, LLC v. Kempthorne, 528 F.3d 1251, 1254 (10th Cir. 2008).

Under the Privacy Act, a plaintiff must file suit within two years from the date on which the cause of action arises. Jackson v. Shinseki, 526 F. App'x 814, 816 (10th Cir. 2013)(citing 5 U.S.C. § 552a(g)(5)). See Lockett v. Potter, 259 F. App'x 784, 786-87 (6th Cir. 2008)("[A] plaintiff must bring a Privacy Act claim in federal district court within two years from the date of the alleged violation.")(citing 5 U.S.C. § 552a(g)(5)). The statute provides:

> An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation. Nothing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to September 27, 1975.

5 U.S.C. § 552a(g)(5)(emphasis added). The United States Court of Appeals for the Tenth Circuit has held that that the statute of limitations for a Privacy Act claim begins to run when the plaintiff knows or has reason to know of the alleged violation. See Bergman v. United States, 751 F.2d 314, 316 (10th Cir. 1984). Other Courts of Appeals also have held that the Privacy Act's statute of limitations begins when the plaintiff knows or has reason to know of a Privacy

Act violation.  See Lockett v. Potter, 259 F. App'x 784, 786-87 (6th Cir. 2008); Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1135 (9th Cir. 2006); Green v. Westphal, 94 F. App'x 902, 904 (3d Cir. 2004);  Davis v. U.S. Dep't of Justice, 204 F.3d 723, 726 (7th Cir. 2000); Doe v. Nat'l Sec. Agency, No. 97-2650, 1998 WL 743665, at *1 (4th Cir. 1998); Tijerina v. Walters, 821 F.2d 789, 797-98 (D.C. Cir. 1987).

According to the Tenth Circuit, a plaintiff's "[f]ailure to file a Privacy Act claim against the government within the statute of limitations is jurisdictional." Harrell v. Fleming, 285 F.3d at 1293 (citing Diliberti v. United States, 817 F.2d 1259, 1262 (7th Cir. 1987)).  "Congress waived the sovereign immunity of the United States when it enacted the Privacy Act but imposed a two-year statute of limitations."  Harrell v. Fleming, 285 F.3d at 1293.  "The statute of limitations qualifies the waiver of sovereign immunity and "'constitutes a limitation on subject matter jurisdiction.'"  Harrell v. Fleming, 285 F.3d at 1293 (quoting Dahn v. United States, 127 F.3d 1249, 1252 (10th Cir. 1997)).  See Dahn v. United States, 127 F.3d at 1252 ("This statutory time-bar qualifies a waiver of sovereign immunity and, thus, constitutes a limitation on subject matter jurisdiction.")(citing United States v. Dalm, 494 U.S. 596, 608 (1990); Dieckmann v. United States, 550 F.2d 622, 623 (10th Cir. 1977)).  Accordingly, a plaintiff's failure to file a Privacy Act claim against the government within the Privacy Act's limitations period "deprives the court of subject matter jurisdiction." Jackson v. Shinseki, 526 F. App'x at 816 (citing Harrell v. Fleming, 285 F.3d at 1293-94).

The Tenth Circuit's approach to the jurisdictional nature of the Privacy Act's statute of limitations follows the United States Court of Appeals for the Seventh Circuit's opinion in Diliberti v. United States, 817 F.2d at 1262.  In Diliberti v. United States, the Seventh Circuit concluded:

No federal court has expressly addressed whether the two-year statute of limitations contained in the Privacy Act, 5 U.S.C. § 552a(g)(5), is a jurisdictional prerequisite to bringing suit. The statutory time limitation, however, is unquestionably an integral condition of the sovereign's consent to be sued under the Privacy Act. Accordingly, we hold that a plaintiff's failure to file suit within the time period specified in § 552a(g)(5) deprives the federal courts of subject matter jurisdiction over the action.

Diliberti v. United States, 817 F.2d at 1262.  To arrive at this holding, the Seventh Circuit

reasoned:

Courts have consistently held that where the government's consent as sovereign to be sued is conditioned upon the filing of suit within a specified period of time, strict compliance with that condition is a jurisdictional prerequisite.  See, e.g., McIntyre v. United States, 789 F.2d 1408, 1411 (9th Cir. 1986) (action to quiet title against U.S., 28 U.S.C. § 2409a(f)); Clifton v. Heckler, 755 F.2d 1138, 1144-1145 (5th Cir. 1985)(action against U.S. for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B)); Charlton v. United States, 743 F.2d 557, 558-559 (7th Cir. 1984)(suit under Federal Tort Claims Act, 28 U.S.C. § 2401(b)); Sims v. Heckler, 725 F.2d 1143, 1145 (7th Cir. 1984)(suit against U.S. under Title VII); Walters v. Secretary of Defense, 725 F.2d 107, 112 n.12 (D.C. Cir. 1983) (28 U.S.C. § 2401(a)); Anderberg v. United States, 718 F.2d 976, 977 (10th Cir. 1983) (28 U.S.C. § 2401(a)); Monark Boat Co. v. NLRB, 708 F.2d 1322, 1326-27 (8th Cir. 1983)(action against U.S. for attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504(a)(2)); Garrett v. United States, 640 F.2d 24, 26 (6th Cir. 1981)(28 U.S.C. § 2401(b)); Knapp v. United States, 636 F.2d 279, 282 (10th Cir. 1980)(28 U.S.C. § 2409a(f)); 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3654 (1985). This characterization of the statute of limitations as jurisdictional in cases against the federal government arises out of the doctrine of sovereign immunity. As the Supreme Court has repeatedly held, "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160 (quoting United States v. Sherwood, 312 U.S. 584 (1941)).  In Block v. North Dakota, 461 U.S. 273, 287 (1983), the Court specifically addressed statutes of limitations: "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity."  See also Simon v. United States, 244 F.2d 703, 705 (5th Cir. 1957) (statute containing time limit for filing suit against U.S. "is not a statute of limitations but a statute granting for a limited time the right of action afforded"). Conditions attached to the sovereign's consent to be sued must be strictly construed.  Block, 461 U.S. at 287; Lehman, 453 U.S. at 160-161; United States v. Kubrick, 444 U.S. 111, 117-18 (1979).

- 13 -

Diliberti v. United States, 817 F.2d at 1261-62.

The Courts of Appeal have not unanimously adhered to the view that the Privacy Act's statute of limitations is jurisdictional, such that a plaintiff's failure to file a Privacy Act claim within the Privacy Act's limitations period deprives a federal court of subject-matter jurisdiction over the claim. In particular, the United States Court of Appeals for the D.C. Circuit and the United States Court of Appeals for the Ninth Circuit have each held that the Privacy Act's statute of limitations is not jurisdictional. See Rouse v. U.S. Dep't of State, 567 F.3d 408, 415-16 (2008)(holding that the Privacy Act's statute of limitations is not categorically jurisdictional); Chung v. U.S. Dep't of Justice, 333 F.3d 273, 278 n.1 (D.C. Cir. 2003)(overruling the D.C. Circuit's prior statement in Griffin v. United States Parole Comm'n, 192 F.3d 1081, 1082 (D.C. Cir. 1999)(per curium), that the limitation period in the Privacy Act is jurisdictional). See also Griffin v. U.S. Parole Comm'n, 47 F. Supp. 2d 12, 15-16 (D.D.C. 1999)(holding that the court "has subject matter jurisdiction over plaintiff's Privacy Act claim [although the claim was filed after the statute of limitations had run], but that plaintiff has failed to state a claim upon which relief may be granted"), aff'd, 192 F.3d 1081 (D.C. Cir. 1999).

As the D.C. Circuit recognized, "[a]t least until 1990, it was not uncommon for a court to deem a time limit for suing the Government 'jurisdictional' and hence not subject to judicial malleation." Chung v. U.S. Dep't of Justice, 333 F.3d at 276 (citing Acting on Smoking & Health v. C.A.B., 724 F.2d 211, 225 (D.C. Cir. 1984); Soriano v. United States, 352 U.S. 270, 276 (1957)). The Supreme Court's decision in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), however, vitiated this "jurisdictional" view of statutes of limitations relating to claims against the United States. Chung v. U.S. Dep't of Justice, 333 F.3d at 276. In Rouse v. U.S. Dep't of State, the Ninth Circuit explained why: (i) if the Privacy Act's statute of

limitations is a jurisdictional bar, then the traditional defense of equitable tolling cannot apply, see Rouse v. U.S. Dep't of State, 567 F.3d at 415 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); (ii) but, in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), "the Supreme Court announced a 'general rule' that 'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States,'" see Rouse v. U.S. Dep't of State, 567 F.3d at 415 (quoting Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96); (iii) therefore, because the Privacy Act's statute of limitations may be equitably tolled, it cannot be a categorically jurisdictional bar, see Rouse v. U.S. Dep't of State, 567 F.3d at 416 (citing Chung v. U.S. Dep't of Justice, 333 F.3d at 277.  In Rouse v. U.S. Dep't of State, the Ninth Circuit observed that, after the Supreme Court decided Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96, "at least two other circuits (one in an unpublished opinion) have . . . ruled that § 552a(g)(5) is jurisdictional."  Rouse v. U.S. Dep't of State, 567 F.3d at 416 n.5 (citing Harrell v. Fleming, 285 F.3d at 1293; Weber v. Henderson, 33 F. App'x 610, 611 (3d Cir. 2002)).  The Ninth Circuit also noted, however, that neither Harrell v. Fleming, 285 F.3d at 1293, nor Weber v. Henderson, 33 F. App'x at 611, "appear to have considered the implications of Irwin."  Rouse v. U.S. Dep't of State, 567 F.3d at 416 n.5 (alteration added).

## LAW REGARDING RULE 12(B)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence."). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the

defense of the court's "lack of jurisdiction over the subject matter" by motion.

Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has held that motions to dismiss for lack of subject-

matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the

complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts

upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F. 3d 1173, 1180

(10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in
> opposing a rule 12(b)(6) motion: the court must consider the complaint's
> allegations to be true. But when the attack is aimed at the jurisdictional facts
> themselves, a district court may not presume the truthfulness of those allegations.
> A court has wide discretion to allow affidavits, other documents, and a limited
> evidentiary hearing to resolve disputed jurisdictional facts under rule 12(b)(1). In
> such instances, a court's reference to evidence outside the pleadings does not
> convert the motion to a Rule 56 [summary-judgment] motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10–0133 JB/KBM, 2011 WL 6013025, at *8

(D.N.M. Sept. 30, 2011)(Browning, J.)(alteration in original)(quoting Alto Eldorado Partners v.

City of Santa Fe, No. CIV. 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. March 11,

2009)(Browning, J.))(internal citations omitted). As the United States Court of Appeals for the

Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or
> Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial
> court's jurisdiction -- its very power to hear the case -- there is substantial
> authority that the trial court is free to weigh the evidence and satisfy itself as to
> the existence of its power to hear the case. In short, no presumptive truthfulness
> attaches to plaintiff's allegations, and the existence of disputed material facts will
> not preclude the trial court from evaluating for itself the merits of jurisdictional
> claims.

Williamson v. Tucker, 645 F.2d at 412-13 (5th Cir.1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  Consequently, when making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).

### LAW REGARDING STATUTES OF LIMITATIONS AND RULE 12(B)(6)

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  Torrez v. Eley, 378 F. App'x 770, 772 (10th Cir. 2010)(quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). See Lee v. Rocky Mountain UFCW Unions & Employers Trust Pension Plan, No. 92-1308, 1993 WL 482951, at *1 (10th Cir. Nov. 23, 1993)("Because the critical dates appeared plainly on the face of [plaintiff's] complaint, we conclude that the statute of limitations defense was properly raised and resolved in the Rule 12(b) context.").  When a party has asserted a statute of limitations issue in a rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff to determine whether the statute of limitations has run.  See Sunrise Valley, LLC v. Kempthorne, 528 F.3d 1251, 1254 (10th Cir. 2008).

### LAW REGARDING EQUITABLE TOLLING

Equitable tolling of a statute of limitations applies only in "rare and exceptional circumstances."  Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007)(quotations omitted). "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008)(quotations omitted).  "Such extraordinary

event[s] include conduct by a defendant that caused the plaintiff to refrain from filing an action

during the applicable period."   Roberts v. Barreras, 484 F.3d 1236, 1241 (10th

Cir. 2007)(internal quotations omitted).  See Gibson v. Klinger, 232 F.3d 799, 808 (10th

Cir. 2000)(stating that the equitable remedy "would be appropriate, for example, when a

[plaintiff] is actually innocent, when an adversary's conduct -- or other uncontrollable

circumstances -- prevents a [plaintiff] from timely filing, or when a [plaintiff] actively pursues

judicial remedies but files a defective pleading during the statutory period.").

## LAW REGARDING STATUTORY CONSTRUCTION

When interpreting statutes, the Court must start with the plain language.  See, e.g., Been

v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10th Cir. 2007)("We review issues of statutory

construction de novo, interpret[ing] the words of the statute in light of the purposes Congress

sought to serve.")(internal quotations and citations omitted).  "It is well established that when the

statute's language is plain, the sole function of the courts -- at least where the disposition

required by the text is not absurd -- is to enforce it according to its terms."  Lamie v. U.S.

Trustee, 540 U.S. 526, 534 (2004)(internal quotations omitted).  See In re Trans Alaska Pipeline

Rate Cases, 436 U.S. 631, 643 (1978)(noting that a court may not disregard the statute's plain

language unless a literal application of the statutory language "would lead to absurd results . . . or

would thwart the obvious purpose of the statute")(internal quotations omitted).  "Courts indulge

a strong presumption that Congress expresses its intent through the language it chooses.

Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we

should stick to our duty of enforcing the terms of the statute as Congress has drafted it."  United

Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165, 171 (4th Cir. 2005)(internal quotations omitted).  See Public Lands Council v. Babbitt, 167 F.3d 1287, 1314 (10th Cir. 1999)(Seymour, C.J.)("In examining . . . [statutory] language, we assume that the words chosen by Congress are employed in their ordinary sense and accurately express Congress' [ ] legislative purpose.").

## ANALYSIS

Carter may proceed in forma pauperis.  While the Court has great reservations about the conclusion of Harrell v. Fleming, 285 F.3d at 1293, in light of Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96, the Court is bound to faithfully apply the Tenth Circuit's view that a plaintiff's failure to file a Privacy Act claim against the government within the Privacy Act's limitations period "deprives the court of subject matter jurisdiction," Jackson v. Shinseki, 526 F. App'x at 816 (citing Harrell v. Fleming, 285 F.3d at 1293-94).  But for Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96, the Court would agree with the Tenth Circuit's conclusion in Harrell v. Fleming, 285 F.3d at 1293.  In this case, the Court dismisses Carter's Privacy Act claims under rule 12(b)(1), because the Privacy Act's statute of limitations imposes a jurisdictional bar and Carter failed to file his Privacy Act claims within the limitations period.

## I.     CARTER MAY PROCEED IN FORMA PAUPERIS.

The Court will grant Carter's Application to proceed without prepaying fees or costs. While a litigant need not be "absolutely destitute," "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life."  Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. at 339.  Carter signed an affidavit declaring that he is unable to pay the costs of these proceedings, swearing that: (i) the income amount he expects to receive next month is $2,608.83

in disability, see Application at 2; (ii) his average monthly expenses are $3,418.81, see Application at 5; (iii) the value of his assets is $2,019.00, see Application at 3; (iv) his amount of cash is fifty-five cents, and he has $2.55 in his Wells Fargo checking and savings account, see Application at 2; and (iv) he is unemployed, see Application at 2.  While he currently has assets to cover the $400.00 filing fee, he is running a monthly deficit, suggesting that he will gradually deplete these assets if they are liquid.  If they are not really liquid the Court cannot consider that as an available means to pay the filing fee.  And while Carter is claiming the United States Department of Veterans Affairs owes him $397,800.00, the Court finds no basis to conclude that this sum is currently available for Carter to pay the filing fee.  The Court concludes that Carter is unable to pay the filing fee, because he is unemployed, his monthly expenses exceed his monthly income, his assets will be depleted if they are liquid, and any amount he claims that the Department of Veterans Affairs owes him is not helpful now.  See Cedrins v. Shrestha, CIV 09-0262, 2009 WL 1312959, at *1 (D.N.M. Mar. 31, 2009)(Browning, J.).  In Cedrins v. Shrestha, the Court authorized the filing of Cedrins' "complaint" without the payment of the filing fee, because "Cedrins submitted an affidavit . . . [in which she alleged] that she is unemployed and has no savings or other assets which she can use in the prosecution of this litigation."  2009 WL 1312959, at *1.  Similarly, the Court will allow Carter to proceed in forma pauperis based on the statements in his affidavit.[3]

---

[3]Although the Court will dismiss Carter's complaint for lack of subject-matter jurisdiction, see infra, the lack of jurisdiction does not prevent the Court from determining that Carter may proceed in forma pauperis based on the statements in his affidavit.  The Court may grant a motion to proceed in forma pauperis even though the Court must later dismiss because, for example, the complaint is frivolous.  See 28 U.S.C. § 1915(e)(2)(B)(i); Buchheit v. Green, 705 F.3d at 1160-61 ("There is simply nothing in the language of the statute [regarding proceedings in forma pauperis, 28 U.S.C. § 1915] indicating that such a dismissal must occur before the grant of a motion to proceed [in forma pauperis].");  Oughton v. United States, 310

## II.   THE PRIVACY ACT'S STATUTE OF LIMITATIONS BARS CARTER'S PRIVACY ACT CLAIMS

The Privacy Act's two-year statute of limitations, 5 U.S.C. § 552a(g)(5), bars Carter's Privacy Act claims.  On June 30, 2014, Carter discovered that McLaughlin had entered an allegedly false medical history into Carter's medical records.  See Complaint ¶ 13, at 5 ("Plaintiff further alleges that on June 30, 2014, Plaintiff discovered the alleged false medical history had been entered in his medical records by PA McLaughlin . . . .").  The Privacy Act's statute of limitations began to run on that day.  See, e.g., Bergman v. United States, 751 F.2d at 316 (10th Cir. 1984).  See also, e.g., Lockett v. Potter, 259 F. App'x at 786-87 ("The Seventh, Ninth, Tenth, and D.C. Circuits have held that the statute of limitations for a Privacy Act claim begins to run when the plaintiff knows or has reason to know of the alleged violation.")(internal citations omitted).  Carter filed his Privacy Act claims on July 6, 2016 -- more than two years after Carter knew of the alleged violation.  See Complaint ¶¶ 1-33, at 1-17.  When, therefore, Carter filed his Privacy Act claims on July 6, 2016, the Privacy Act's statute of limitations had run.

It remains for the Court to decide the legal effect that the running of the Privacy Act's

F.2d at 804 (noting that in forma pauperis status may be granted before a complaint is dismissed under 28 U.S.C. § 1915).  See also Shapiro v. McManus, 136 S. Ct. 450, 455 (2015)(noting that "'wholly insubstantial and frivolous claims' implicate" a federal court's federal-question subject-matter jurisdiction)(quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)).  Moreover, "'a federal court always has jurisdiction to determine its own jurisdiction.'"  Petrella v. Brownback, 697 F.3d 1285, 1292 (10th Cir. 2012)(quoting United States v. Ruiz, 536 U.S. 622, 627 (2002); Latu v. Ashcroft, 375 F.3d 1012, 1017 (10th Cir. 2004)(noting "inherent jurisdiction of Article III federal courts to determine their jurisdiction")).  The Court necessarily may decide certain issues raised, for example, by a motion to continue or a motion appoint counsel, which are necessary for the Court to determine whether it has jurisdiction over the case.  Accordingly, the Court will allow Carter to proceed in forma pauperis and to file the Complaint.  The Court then analyzes Carter's Complaint to determine whether the Court has jurisdiction to proceed.

statute of limitations has on Carter's Privacy Act claims. If, on the one hand, the Privacy Act's statute of limitations is jurisdictional, then the Court should sua sponte decide whether it has jurisdiction to proceed. The Court must inquire into its jurisdiction sua sponte, because the parties did not raise the issue of the Court's subject-matter jurisdiction. See Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988)(determining that, if "the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte"). See also Answer at 5 (failing to raise a defense under rule 12(b)(1)). If, on the other hand, the Privacy Act's statute of limitations is an affirmative defense, then the Court should consider whether the statute bars Carter's claims pursuant to rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Torrez v. Eley, 378 F. App'x at 772 (determining that a "statutes of limitations bar . . . may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished")(internal quotation marks and citation omitted).

In considering the legal effect of the running of the Privacy Act's statute of limitations, the Court considers the implications raised by the Supreme Court's opinion in Irwin v. Department of Veterans Affairs, which considered a limitations period in another statutory context. See 498 U.S. at 95-96. In that case, the Supreme Court held that a rebuttable presumption of equitable tolling applies to statutes of limitations that would otherwise bar suits filed against the United States. See Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96 (holding "that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"). Consequently, the Supreme Court held that equitable tolling applied to 42 U.S.C. § 2000e-16(c), which required the petitioner, Shirley Irwin, to file a complaint within thirty days of the Equal Employment

Opportunity Commission's decision.[4]

Justice White concurred in part, but did "not join the portion of the opinion holding that the 30 day time period is subject to equitable tolling." Irwin v. Department of Veterans Affairs, 498 U.S. at 97 (White, J., concurring in part). Justice White reasoned that "statutory deadlines for suits against the Government, such as the one in this case, are conditions on the Government's waiver of sovereign immunity," 498 U.S. at 97 (White, J., concurring in part), and, therefore, "must be 'strictly observed and exceptions thereto are not to be implied,'" 498 U.S. at 97 (White, J., concurring in part)(quoting Lehman v. Nakshian, 453 U.S. 156, 161 (1981)). As a result, Justice White declined to join the Supreme Court's holding that equitable tolling applied to 42 U.S.C. § 2000e-16(c), because "Congress did not expressly provide for equitable tolling of the 30-day filing deadline in § 2000e-16(c)." Irwin v. Department of Veterans Affairs, 498 U.S. at 97 (White, J., concurring in part).

---

[4]After the Supreme Court decided Irwin v. Department of Veterans Affairs, 498 U.S. 89, Congress amended 42 U.S.C. § 2000e-16(c) to provide for a 90-day limitations period. See 42 U.S.C. § 2000e-16(c). The statute provides:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c).

If the issue of equitable tolling of federal statutes of limitations were open, then the Court would agree with Justice White's reasoning that, unless Congress expressly provides for equitable tolling in a waiver of sovereign immunity, it does not make sense to apply the judge-made doctrine of equitable tolling to statutes of limitations that otherwise bar suits filed against the United States.  See Irwin v. Department of Veterans Affairs, 498 U.S. at 97 (White, J., concurring in part).  The Court recognizes, however, that the issue is not open.  See Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96 (holding "that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States").  Consequently, in light of Irwin v. Department of Veterans Affairs, the Court agrees with the Ninth Circuit's and the D.C. Circuit's reasoning that it does not make sense to treat the Privacy Act's statute of limitations as a jurisdictional bar.  See Rouse v. U.S. Dep't of State, 567 F.3d at 415; Chung v. U.S. Dep't of Justice, 333 F.3d at 277).  In Rouse v. U.S. Dep't of State, the Ninth Circuit explained why: (i) if the Privacy Act's statute of limitations is a jurisdictional bar, then the traditional defense of equitable tolling cannot apply, see Rouse v. U.S. Dep't of State, 567 F.3d at 415 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); (ii) but because "the Supreme Court announced [in Irwin v. Department of Veterans Affairs] a 'general rule' that 'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States,'" see Rouse v. U.S. Dep't of State, 567 F.3d at 415 (quoting Irwin v. Department of Veterans Affairs, 498 U.S. at 95-96); (iii) therefore, because the Privacy Act's statute of limitations may be equitably tolled, it cannot be a categorically jurisdictional bar, see Rouse v. U.S. Dep't of State, 567 F.3d at 416 (citing Chung v. U.S. Dep't of Justice, 333 F.3d at 277).

Notwithstanding the Court's view that the Supreme Court's analysis in Irwin v.

Department of Veterans Affairs implies that the Privacy Act's statute of limitations does not impose a jurisdictional bar, the Court is bound to follow faithfully the Tenth Circuit's view that a plaintiff's failure to file a Privacy Act claim against the United States within the Privacy Act's limitations period "deprives the court of subject matter jurisdiction."  Jackson v. Shinseki, 526 F. App'x at 816 (citing Harrell v. Fleming, 285 F.3d at 1293-94).  Accordingly, the Court dismisses Carter's Privacy Act claims pursuant to rule 12(b)(1) for lack of subject-matter jurisdiction, according to the Tenth Circuit's guidance in Jackson v. Shinseki, 526 F. App'x at 816, and Harrell v. Fleming, 285 F.3d at 1293.[5]

**IT IS ORDERED** that: (i) the Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), filed July 6, 2016 (Doc. 2), is granted; (ii) the Plaintiff's Complaint for Declaratory and Injunctive Relief; and for Damages under the U.S. Privacy Act, filed July 6, 2016 (Doc. 1), is dismissed without prejudice.

---

[5]The Court dismisses for lack of subject-matter jurisdiction and, hence, is without jurisdiction to adjudicate the Defendants' affirmative defense that the "Plaintiff's claims are barred based on his failure to timely exhaust [his] administrative remedies."  Answer at 5. "[E]xhaustion of administrative remedies under the Privacy Act is not a jurisdictional prerequisite." Taylor v. U.S. Treasury Dept., 127 F.3d 470, 475 (5th Cir. 1997).  See Wadhwa v. Dep't of Veterans Affairs, 342 F. App'x 860, 862-63 (3d Cir. 2009)("We also disagree with the District Court's conclusion that it lacks jurisdiction to entertain Wadhwa's claim under the Privacy Act because Wadhwa failed to exhaust his administrative remedies.  There is no statutory requirement of exhaustion related to a request for access to records.")(citing 5 U.S.C. § 552a(d)).  Rather, under the Privacy Act, a complaint "'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.'"  McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 475 (10th Cir. 2004)(quoting Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003)).  Accordingly, the Court will not determine the Defendants' exhaustion-of-remedies defense, because the Court lacks jurisdiction over Carter's suit.  See, e.g., Bell v. Hood, 327 U.S. at 682 ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Terry Louis Carter
Las Cruces, New Mexico

    *Plaintiff pro se*

Damon P. Martinez
  United States Attorney
Michael H. Hoses
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for Defendants United States Department of Defense, United States Department of the Air Force, and Mike O'Callaghan Federal Medical Center USAF 99th Medical Group*